**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Crim. Case No. 24-506-TJK** |
| **v.** | |
| **BRYAN KINARD,** | |
| **Defendant.** | |

## UNITED STATES' MEMORANDUM IN AID OF SENTENCING

As a Correctional Officer with the D.C. Department of Corrections ("DOC"), Bryan Kinard was charged with enforcing the regulations governing the operations of the facility and ensuring a safe environment for detainees and staff. Instead, Officer Kinard smuggled dangerous contraband into the Central Detention Facility ("CDF") on behalf of detainees who have since been convicted of murder or assault with intent to kill. This contraband included controlled substances, as well as cellular phones used to obstruct justice in an ongoing case before Judge Friedrich. To Officer Kinard's credit, he immediately took responsibility for his actions and was open and honest with investigators. Crucially, the evidence suggests Officer Kinard did not know what—beyond food—was in the packages he was smuggling into CDF on behalf of the detainees. Given that, and in consideration of the factors set forth in 18 U.S.C. § 3553(a), the Court should sentence him to three years of probation. Such a sentence would be sufficient but not greater than necessary to achieve the purposes of sentencing.

### I.    Background

From August 2023 through July 2024, Officer Kinard worked as a Correctional Officer in CDF. For most of his tenure, he was assigned to a housing unit with various detainees from the Clay Terrace neighborhood of Washington D.C., to include Darius Robertson, Marcel Vines, and

Stephon Freshley (collectively, the "Clay Terrace Detainees"). Prior to Officer Kinard's known involvement with the Clay Terrace Detainees, Correctional Officer Rashaad Roper smuggled or attempted to smuggle controlled substances, a switchblade knife, and a cellphone into CDF on behalf of these detainees. *See* 24-CR-520, ECF No. 1. On February 28, 2024, DOC investigators intercepted two Tupperware containers that were to be smuggled into CDF by Officer Roper for the Clay Terrace Detainees. Officer Roper was placed on administrative leave, and all the correctional officers in Officer Roper's unit, to include Officer Kinard, were informed of the interception of contraband.

With Officer Roper out of the unit and on administrative leave, the Clay Terrace Detainees sought to recruit a new officer to smuggle contraband into CDF. Four months later, they found their man—Officer Kinard. On June 30, 2024, July 7, 2024, and July 21, 2024, Officer Kinard obtained Tupperware containers filled with food from associates of the Clay Terrace Detainees outside the jail and brought them to Stephon Freshley inside CDF. Concealed inside the food was contraband. Each incident was captured on surveillance footage, and the July 21st incident was captured on Officer Kinard's body-worn camera. Officer Kinard can be seen on the July 21st video with audio: (1) providing his license plate number to the Clay Terrace Detainees so that their associate outside the jail could drop the contraband in Officer Kinard's vehicle; (2) coordinating with the Clay Terrace Detainees as to when they would like him to take his break and obtain the contraband from his vehicle; and (3) providing the contraband to Stephon Freshley and describing the "heavy" weight of the Tupperware container.

Two days after the July 21st smuggling incident, two photographs were posted from Mr. Freshley's known Instagram account, "___steflover" despite the fact that he was detained at CDF. The first photograph was a picture of Mr. Vines and his co-defendant in the courtroom during jury

selection of their murder trial before Judge Friedrich that had begun days earlier. The second photograph was a black screen overlaid with text, stating "It ain't going to be safe telling on them Boyz [emojis]."



That post prompted significant new security measures at the courthouse. Additionally, it prompted law enforcement to review surveillance footage from the jail and eventually to identify Officer Kinard as the individual smuggling items in on behalf of Mr. Freshley, Mr. Vines, and Mr. Robertson.

On July 25, 2024, DOC conducted two searches of the Clay Terrace Detainee's unit for contraband. Inside NW-1, DOC staff found, among other things, approximately: (1) 269 blue pills (including 120 from Vines' cell), which tested positive for fentanyl; (2) 60 cigarettes soaked in an unknown liquid (including 40 in Vines' cell); (3) 255 suboxone strips (170 in Vines' cell); (4) 7 pieces of paper soaked in an unknown liquid substance; (5) three cellular phones; and (6) cigarettes.

The next day, on July 26, 2024, Officer Kinard was terminated by DOC. He admitted to his conduct and relatively shortly thereafter, he agreed to plea guilty prior to an indictment. Officer Kinard insisted that he believed the Tupperware containers only contained outside food for the Clay Terrace Detainees—although he knew that providing the detainees with outside food was not permitted. Unlike Officer Roper who fished the contraband out of the Tupperware to provide to the Clay Terrace Detainees directly, Officer Kinard did not ever appear to look inside the Tupperware.

## II.     Sentencing Guidelines

The parties and the presentence investigation report writer agree that the following guidelines apply.

| | | |
|---|---|---|
| USSG §§ 2X1.1(a)/2P1.2(a)(3) | Base Offense Level | 6 |
| USSG § 2P1.2(b)(1) | Correctional Officer | 2 |
| USSG § 3E1.1 | Acceptance of Responsibility | -2 |
| USSG § 4C1.1 | Zero-Point Offender Adjustment | -2 |

PSR ¶ 30-40. The defendant is in Criminal History Category I. PSR ¶ 43. Based on a total offense level of 4 and CHC I, the guidelines recommend a sentence of 0 to 6 months' imprisonment and a fine of $500 to $9,500.  PSR ¶ 91, 110. Because the recommended imprisonment range falls within Zone A of the Sentencing Table, the Guidelines provide that no term of incarceration is required. *See* PSR ¶ 91, USSG §5C1.1(b). The Guidelines also note that a non-prison sentence is generally appropriate for defendants who are in Zone A of the Sentencing Table if, like Officer Kinard, they received a zero-point offender adjustment. USSG §5C1.1, comment. (n.10).

## III.     The 18 U.S.C. § 3553(a) Factors

The Court must impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford

adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational treatment. 18 U.S.C. § 3553(a)(2). The Court also must consider the history and characteristics of the defendant, the kinds of sentences available, the sentencing range under the guidelines, any relevant policy statements, and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(1)-(6).

Although some of the section 3553(a) factors weigh in favor of a prison sentence, the government believes that the factors as a whole support a probationary sentence.

### A. The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense

Officer Kinard's actions were undoubtedly serious. Bringing controlled substances into an environment with a high population of individuals with substance-abuse problems can have devastating effects. Additionally, while the phones that Officer Kinard smuggled into the jail may appear relatively innocuous, in this case, they were anything but. The evidence in this case suggests that Mr. Freshley used one of the contraband cellphones to intimidate witnesses during his co-defendant's—Mr. Vines'—murder trial before Judge Friedrich in 19-CR-166 (DLF). This and other threats to witnesses made throughout the case led to a significant increase in security at the courthouse and substantial work on the part of law enforcement to ensure the safety of the witnesses.

It is also true, however, that the government lacks evidence that Officer Kinard knew what was inside the Tupperware containers he provided the Clay Terrace Detainees, which stands in stark contrast to the evidence against Officer Roper, who was captured on video fishing out specific items of contraband from the smuggled in food. Moreover, upon being confronted by law enforcement, Officer Kinard admitted to his criminal conduct. He was open and honest throughout

the pendency of this case. And he accepted responsibility in relatively short order. Taken together, the government believes this factor weighs in favor of a probationary sentence.

**B. The Need to Promote Respect for the Law and to Deter the Defendant and Others from This Type of Criminal Conduct**

Officer Kinard is one of at least three DOC employees in the last seven months to be charged in connection with smuggling contraband into a DOC facility. DOC investigators have informed the government that this has put the facility and its staff on high alert. DOC is an insulated environment where the Court's sentence will have a general deterrent effect. While the government is not seeking incarceration in this case, a significant term of probation is warranted.

**C. The History and Circumstances of the Defendant**

Officer Kinard did not enjoy an easy upbringing. *See generally* PSR ¶ 49-55. Yet he overcame many of the obstacles noted in the PSR. At 46-years-old, he has no prior criminal history and an employment history that went nearly uninterrupted until the instant offense. PSR ¶ 77-81. The PSR describes him as an engaged father, including of a child with disabilities. PSR ¶ 57-60. He has no prior issues with substance abuse, PSR ¶ 72-74, and described to the PSR reporter an interest in bettering himself. PSR ¶ 70. On balance, all of this information on Officer Kinard—his

lack of criminal record, his status as a zero-point offender, and the positive contributions he has

made to the community through past employment—weighs in favor of a probationary sentence.

## **<u>CONCLUSION</u>**

The Court should sentence Officer Kinard to three years of probation.


Respectfully submitted,

EDWARD R. MARTIN, JR.
UNITED STATES ATTORNEY
D.C. Bar Number 481866

 /s/ *Joshua Gold*
Joshua Gold
Tx Bar No. 24103101
Assistant United States Attorney
United States Attorney's Office for D.C.
601 D Street NW,
Washington, D.C. 20530
E-mail: Joshua.Gold@usdoj.gov
Telephone: (202) 815-8965